Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except some minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the deputy commissioner and which were entered into by the parties in the Pre-Trial Agreement filed on October 10, 1994, as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties on August 3, 1993.
2. Liberty Mutual Insurance Company was the carrier on the risk.
3. On August 3, 1993, plaintiff's average weekly wage was $692.65, which yields the maximum compensation rate of $442.00.
4. The issue for determination is whether the plaintiff suffered a compensable injury while in the course and scope of his employment, and if so, to what benefits is he entitled.
5. The parties stipulated a ten-page recorded statement of the plaintiff taken on September 24, 1993 into evidence.
*********
Based upon all the competent evidence adduced from the record, the Full Commission adopts the findings of fact of the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a fifty-eight year old male who had attended public school until the second grade and is not able to read or write, except that he can write his name. The plaintiff was employed for twenty-four years and ten months as a long-haul truck driver with defendant-employer.
2. On August 3, 1993, the plaintiff drove to Lansing, Michigan, to pick up a load of machines. As the plaintiff began to bring a strap over the machine, he fell from the bed of the trailer onto the ground. The plaintiff fell a distance of approximately five and one-half feet, landing on his tailbone.
3. Steve Wood was assisting the plaintiff to load the machines onto the trailer bed. Mr. Wood wrote in plaintiff's log book that plaintiff had fallen from the trailer, and plaintiff signed the entry.
4. The plaintiff experienced pain during the return trip; and he telephoned the defendant's dispatcher, Bruce White, to report the injury. Long distance telephone records reflect a call from Leslie, Michigan, on August 3, 1993.
5. The plaintiff delivered the machinery on August 4, 1993 to the customer in Raleigh, at which time he obtained eight boards for his personal use. The plaintiff then drove to defendant's terminal in Edenton.
6. Upon his arrival in Edenton, plaintiff and co-worker Bud Twine put the eight boards in Mr. Twine's truck. The plaintiff's daughter and grandson picked plaintiff up at Sunbury, and the grandson placed the boards in their vehicle.
7. On the evening of August 4, 1993, plaintiff was taken to the emergency room at Roanoke-Chowan Hospital in Ahoskie. The plaintiff related a history of a fall from a tractor-trailer on the day before, and he complained of neck pain which radiated to the low back. A diagnosis of neck and back strain was made, and plaintiff was given medication and a cervical collar. The plaintiff was advised to follow-up with his family doctor, Dr. Flood.
8. On August 6, 1993, plaintiff was seen by Dr. Flood who, thereafter, referred plaintiff to neurosurgeon Dr. Alfred Magness.
9. On August 27, 1993, the plaintiff was seen by Dr. Magness, at which time he related the history of falling from his truck a distance of approximately five and one-half feet and landing on his tailbone. Dr. Magness ordered an MRI and physical therapy. The MRI was reported as normal with mild degenerative changes on the cervical spine, which Dr. Magness has observed to be normal for a fifty-six year old male.
10. On October 21, 1993, the plaintiff complained of increased neck and back pain and right leg pain. A lumbar MRI was ordered which revealed a bulging disc at L4-5. A bone scan disclosed only arthritis changes.
11. Dr. Magness referred plaintiff to the Rehabilitation Center, however, this was denied by the workers' compensation carrier, and plaintiff did not receive rehabilitation from this program.
12. On March 15, 1994, Dr. Magness released the plaintiff to sedentary work with a ten-pound lifting restriction and no bending for at least six months.
13. Plaintiff's last visit to Dr. Magness was on September 20, 1994, at which time he rated the plaintiff as having a five percent permanent partial impairment on the whole person, based on the AMA guidelines. Dr. Magness has opined that plaintiff's current symptoms are the result of the fall on August 3, 1993.
14. After being authorized to return to work, the plaintiff went to ten local grocery stores and to the Employment Security Commission to look for work. However, he was unable to find a job.
15. The plaintiff began baby-sitting for two boys, ages eight and ten, after school for which he is paid $160.00 per month for the ten-month school year.
16. The plaintiff did not earn any wages from defendant after August 4, 1993.
17. Mr. Tom Williams, Vice President of defendant, made a $200.00 loan to plaintiff on August 17, 1993.
18. Since August of 1994, the plaintiff has begun to stumble or fall, and he walks with the assistance of a cane.
19. Mr. Williams has opined that based upon the restrictions given by Dr. Magness and plaintiff's illiteracy, there were no jobs plaintiff could perform for defendant. Further, Mr. Williams stated that plaintiff would not be welcomed back to defendant-employer due to litigation.
20. Defendants have defended this claim without reasonable grounds.
**********
Based on the foregoing stipulations and findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on August 3, 1993. N.C. GEN. STAT. § 97-2 (6).
2. As a result of the compensable injury, the plaintiff is entitled to temporary total disability compensation from August 5, 1993 until the date in the fall of 1994 on which he began baby-sitting. N.C. GEN. STAT. § 97-29. Furthermore, during the months when he is not engaged in baby-sitting, plaintiff is also entitled to temporary total disability compensation until such time as plaintiff returns to work or until further order of the Commission.
3. For the ten months plaintiff engaged in baby-sitting and earned $160.00 per month ($40.00 per week), the plaintiff is entitled to temporary partial disability compensation at the weekly rate of two-thirds of the difference between $692.65 and $40.00. N.C. GEN. STAT. § 97-30.
4. The plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the accident on August 3, 1993.
5. The plaintiff is entitled to have defendants pay an assessment of costs, including attorney's fees for defending this claim without reasonable grounds. N.C. GEN. STAT. § 97-88.1.
************
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay the plaintiff temporary total disability compensation at the rate of $442.00 per week from August 5, 1993 until the date in the fall of 1994 when he began baby-sitting. Thereafter, defendants shall pay temporary total disability benefits to plaintiff at the rate of $442.00 per week during the time when plaintiff is not engaged in baby-sitting or earning wages until such time as plaintiff returns to work earning a wage greater than or equal to his pre-injury wage, or until further order of the Commission. As much of said compensation as has accrued shall be payable to plaintiff in a lump sum.
2. Defendants shall pay to plaintiff temporary partial disability compensation at the rate of two-thirds of the difference between plaintiff's pre-injury average weekly wage and the weekly wage that he earned as a baby-sitter beginning in the fall of 1994. As much of said compensation as has accrued shall be payable to plaintiff in a lump sum.
3. In addition to the amount awarded to plaintiff herein, defendants shall pay plaintiff's counsel directly an amount equal to twenty-five percent of the compensation awarded to plaintiff in paragraphs 1 and 2 above as a reasonable attorney's fee for Mr. Trimpi due to defendant's defense of this claim without reasonable grounds.
4. Defendants shall pay medical expenses incurred, or to be incurred, a result of the compensable injury.
5. Defendants shall pay the costs, including an expert witness fee of $240.00 to Dr. Alfred Magness.
 S/ _________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________ LAURA K. MAVRETIC COMMISSIONER
S/ _________________ J. RANDOLPH WARD COMMISSIONER
BSB:md